Cuthill v. Blinken

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

_____

August Term, 2020

(Argued: January 14, 2021          Decided:  March 9, 2021)

Docket No. 19-3138

_____

VERONICA CUTHILL,

*Plaintiff-Appellee,*

—v.—

ANTONY J. BLINKEN,

*Defendant-Appellant.*[1]

_____

Before: KATZMANN, LOHIER, and CARNEY, *Circuit Judges.*

_____

Appeal from a judgment of the United States District Court for the District of Connecticut (Hall, *J.*). We hold that 8 U.S.C. § 1151(f)(2) incorporates the age-reduction formula in 8 U.S.C. § 1153(h)(1), which deducts processing time from the age of an F2A visa beneficiary. We therefore **AFFIRM**.

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Antony J. Blinken is automatically substituted for former Secretary of State Michael Pompeo.

_____

BRADLEY B. BANIAS, Wasden Banias, LLC, Mount Pleasant, SC (Elizabeth Leete, Leete, Kosto & Wizner, LLP, Hartford, CT, *on the brief*), *for Plaintiff-Appellee*.

VICTOR M. MERCADO-SANTANA (Christopher A. Bates, William C. Peachey, Samuel P. Go, *on the brief*), United States Department of Justice, Washington, DC, *for Defendant-Appellant*.

_____

KATZMANN, *Circuit Judge*:

In this case, we examine the architecture of a statutory regime, delving into the text, structure, purpose, and legislative history of the statute.

To qualify for an F2A visa, the son or daughter of a lawful permanent resident must be under 21 years old. The Child Status Protection Act ("CSPA") mandates that the government exclude from the age calculation the time that it spent processing the visa petition. For example, if the daughter of a lawful permanent resident is 22 years old when her F2A visa becomes available but it took the government two years to process her petition, her "statutory age" for F2A purposes would be 20 years old, making her still eligible for an F2A visa. *See* 8 U.S.C. § 1153(h)(1).

A related CSPA provision provides that if the parent of an F2A beneficiary naturalizes while the F2A petition is pending, the F2A petition may be converted

to a more favorable immediate-relative petition, but only if "the age of the [son or daughter] on the date of the parent's naturalization" is under 21. *Id.* § 1151(f)(2). The question before us is whether the term "age" in § 1151(f)(2) incorporates the age-reduction formula set forth in § 1153(h)(1). Based on the text, structure, purpose, and legislative history of the CSPA, we hold that it does. And because Veronica Cuthill's daughter was statutorily under 21 years old when Cuthill naturalized, she qualifies for an immediate-relative visa.

## BACKGROUND

### A. The Family-Based Visa Regime

Federal law allows citizens and lawful permanent residents ("LPRs") of the United States to obtain immigrant visas for their sons or daughters to join them in the United States. The parent is called the "sponsor" and the son or daughter is called the "beneficiary." Four types of such visas are relevant to this appeal:

- **Immediate-relative visa**: for minor (under 21) sons and daughters of citizens.

- **F1 visa**: for adult (21 or over) sons and daughters of citizens.

- **F2A visa**: for minor (under 21) sons and daughters of LPRs.

- **F2B visa**: for adult (21 or over) sons and daughters of LPRs.

*See id.* § 1151(b)(2)(A)(i) (immediate-relative visas); *id.* § 1153(a)(1) (F1 visas); *id.* § 1153(a)(2)(A) (F2A visas); *id.* § 1153(a)(2)(B) (F2B visas). The term "child" is

3

defined by statute to refer to "an unmarried person under twenty-one years of age," *id.* § 1101(b)(1), so we use the term "child" to refer only to a son or daughter under the age of 21.[1]

As relevant here, the general visa application process is as follows. First, the sponsoring parent files a petition on Form I-130, Petition for Alien Relative, on behalf of his or her beneficiary son or daughter. The U.S. Citizenship and Immigration Services ("USCIS") thereafter reviews the petition and, if everything is in order, approves it. This process can take up to a year or more. *See generally Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 46–50 (2014) (plurality opinion).

Once the petition is approved, the journey for immediate-relative-visa seekers ends there: Visas in that category are not subject to any numerical caps, so they can receive their visas soon after their petitions are approved. Not so for the three other relevant visa categories — F1, F2A, and F2B. For those beneficiaries, approval results not in getting a visa, but only in getting a place in a second, often longer line. *See id.* at 47–48. This is because federal law caps the number of visas issued each year in these categories, *see* 8 U.S.C. § 1153(a), and "demand regularly

---

[1] The relevant visa categories restrict eligibility to unmarried sons and daughters; Cuthill's daughter was unmarried during the events at issue.

exceeds the supply," *Scialabba*, 573 U.S. at 48.[2] As a consequence, the beneficiary of an approved petition is placed in a first-come, first-served queue with others in her category in order of "priority date"— that is, the date on which the visa petition was filed. *See id.* at 47–48. Each month, the Department of State publishes a bulletin indicating the cutoff dates for F1, F2A, and F2B visas. For example, the January 2021 bulletin states that the cutoff date for F1 visas, with certain exceptions, is September 15, 2014, meaning that visas are available for F1 beneficiaries whose petitions were filed before that date. *See* U.S. Dep't of State, Bureau of Consular Affairs, Visa Bulletin for January 2021 (hereinafter "January 2021 Bulletin").[3] Once a visa becomes available, the beneficiary can apply for a visa, schedule an interview, and, if all goes right, come to the United States.

Thus, there are two relevant waiting periods for F1, F2A, and F2B visa seekers: (1) the time it takes for the agency to process the petition and (2) the time it takes for a visa to become available. One must therefore be mindful of the distinction between a visa *petition*, which is the first step in the process and earns

---

[2] In quoting cases, we omit internal citations, quotation marks, footnotes, and alterations unless otherwise noted.

[3] https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2021/visa-bulletin-for-january-2021.html.

the visa-seeker a spot in line, and a visa *application*, which can be filed only after the visa becomes available.[4]

When applying for a visa, age is extremely important. A minor son or daughter can obtain a visa much faster than an adult son or daughter can. There is great demand for visas by adult sons and daughters of citizens and LPRs, which results in long queues for F1 and F2B visas. Thus, while a minor son or daughter of a citizen can obtain an immediate-relative visa shortly after her petition is approved, an adult son or daughter of a citizen must first wait in the F1 visa queue, which was over six years long as of January 2021. *See* January 2021 Bulletin. Likewise, a minor son or daughter of an LPR can wait in the relatively short (and sometimes nonexistent) F2A queue while an adult son or daughter of an LPR must wait in the F2B visa queue, which was over five years long as of January 2021. *See id.*

Because the age determination is made *after* all that waiting time — *i.e.*, after the petition is approved and the visa becomes available — there existed a serious problem whereby child beneficiaries "aged out" of their immediate-relative or

---

[4] There is a third potential source of delay: the time it takes to process the application once a visa becomes available. *See Scialabba*, 573 U.S. at 48–50. This delay occurs at the final stage of the process and is not relevant to this appeal.

F2A visa eligibility. The long wait times may have meant that a beneficiary who was a 17-year-old high school student when her mother petitioned for an F2A visa had become a 22-year-old college graduate by the time the visa became available. In other words, by the time child beneficiaries might become eligible to obtain the visas for which they originally petitioned, those beneficiaries might no longer be minors and thus no longer eligible for those visas.

### B. The Child Status Protection Act

To fix this problem, Congress in 2002 — with unanimous bipartisan support — enacted the Child Status Protection Act ("CSPA"), Pub. L. No. 107-208, 116 Stat. 927 (2002). Recall that, for immediate-relative-visa seekers, the only delay they face is the time that USCIS takes to process the petition. By contrast, there are two sources of delay for F1, F2A, and F2B visa seekers: (1) the time that USCIS takes to process the petition and (2) the time that it takes for a visa to become available. The CSPA provides that the former source of delay — the bureaucratic processing time — should be subtracted from the biological age of a visa beneficiary for purposes of determining their minor status. In contrast, the time

lost because of the latter source of delay — time spent waiting in a visa queue — is not subtracted from the beneficiary's age. *See Scialabba*, 573 U.S. at 53.

The CSPA enacted these changes via several interrelated provisions. First, 8 U.S.C. § 1151(f)(1) fixes the "aging out" problem for immediate-relative beneficiaries by providing that, for immediate relatives, the "determination of whether [such] an alien satisfies the [immigration law's] age requirement [to be under the age of 21] . . . shall be made using the age of the alien on the date on which the petition is filed . . . ." In other words, as long as the beneficiary was under 21 when the initial petition was filed, she remains eligible regardless of her current age.

For F2A visa beneficiaries, the CSPA provides that, "[f]or purposes of [8 U.S.C. § 1153(a)(2)(A), which requires F2A beneficiaries to be under 21 years old], a determination of whether an alien [is under 21 years old] shall be made using" the age of the beneficiary on the date when a visa becomes available, reduced by the time that the petition was pending. *Id.* § 1153(h)(1); *see also Scialabba*, 573 U.S. at 52–53. For example, assume an F2A petition is filed for a 17-year-old beneficiary, the agency takes two years to process the petition, and it takes three years for a visa to become available. Prior to the CSPA, the now-22-year-old beneficiary was

out of luck: She would have aged out and would no longer be eligible for an F2A visa. Thanks to the CSPA, however, we deduct the two years of processing time (though not the three years of waiting time) yielding a statutory age of 20. As far as the U.S. government is concerned, the two years of processing time never happened.

It bears repeating that only the processing time — *i.e.*, bureaucratic delay — is excluded from the age calculation. The time spent waiting for a visa to become available is not excluded. The CSPA thus provides that if the F2A beneficiary's statutory age is still 21 or older even after deducting the processing time, the F2A petition automatically converts to an F2B petition (which, recall, is for adult sons and daughters of LPRs). *See* 8 U.S.C. § 1153(h)(3); *Scialabba*, 573 U.S. at 62. Sensibly, Congress provided that the beneficiary retains her original priority date and does not have to go to the back of the F2B queue. *See* 8 U.S.C. § 1153(h)(3).

The CSPA went further still by addressing another contingency that occurs often while visa petitions are pending — namely, that the LPR sponsor becomes a naturalized U.S. citizen. Since the visa regime is tied to the sponsor's status, the change in the sponsor's status normally requires a corresponding change to the beneficiary's visa petition. The CSPA's solution for F2B applicants (adult sons and

9

daughters of LPRs) is straightforward; its solution for F2A applicants (minor children of LPRs) is less so. *See Scialabba*, 573 U.S. at 51–52.

For F2B applicants, the CSPA provides that if the sponsor naturalizes while the application is pending, the adult beneficiary has the choice of staying in the F2B queue or transferring to the F1 queue, which covers adult sons and daughters of citizens. *See* 8 U.S.C. § 1154(k). Again, Congress provided that the applicant retains her original priority date regardless of which queue she chooses. *See id.* § 1154(k)(3).

The CSPA does not have an analogous provision for an F2A beneficiary whose sponsor naturalizes. However, the statute contemplates that the F2A petition would be converted to a petition for an immediate-relative visa. The provision at issue in this case — 8 U.S.C. § 1151(f)(2) — provides that "[i]n the case of [an F2A petition], if the petition is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative . . . the determination [of whether the beneficiary is a minor] shall be made using the age of the alien on the date of the parent's naturalization." In other words, as long as the beneficiary is under 21 years old at the time of her sponsor's naturalization, she can transfer to the immediate-relative category.

10

To recap, the CSPA indisputably covers most eventualities:

- **If a citizen petitions for an immediate-relative visa for their minor son or daughter and the son or daughter turns 21 while the petition is pending**. The beneficiary remains eligible for an immediate-relative visa so long as she was under 21 years old when the petition was filed. *See id.* § 1151(f)(1).

- **If an LPR petitions for an F2A visa for their minor son or daughter and the son or daughter turns 21 before a visa becomes available.** Calculate the beneficiary's statutory age by taking their age at the time that the visa becomes available and deducting the processing time (but not the waiting time for visa availability). If the resulting age is under 21 years old, she remains eligible for an F2A visa. If the resulting age is 21 years or older, the F2A petition converts to an F2B petition, though the beneficiary retains her original priority date. *See id.* § 1153(h)(3).

- **If an LPR petitions for an F2B visa for their adult son or daughter and the parent naturalizes before a visa becomes available.** The beneficiary can choose to stay in the F2B queue or transfer to the F1 queue. Either way, the beneficiary retains her original priority date. *See id.* § 1154(k).

- **If an LPR petitions for an F2A visa for their minor child and the parent naturalizes before a visa becomes available and the child's biological age is still under 21 years old.** The sponsoring parent can convert the F2A petition into an immediate-relative petition. *See id.* § 1151(f)(2).

But the CSPA does not expressly cover one variation on the last scenario: A parent petitions for an F2A visa for her minor son or daughter and naturalizes when the son or daughter's statutory age is under 21 but his or her biological age

11

is over 21. To determine whether such a petition can be converted from an F2A petition into an immediate-relative petition, should "the age of the alien on the date of the parent's naturalization" in § 1151(f)(2) be interpreted as the statutory age or as the biological age on that date? That is the question in this appeal.

## C. Factual and Procedural Background

The essential facts here are undisputed. On December 23, 1996, plaintiff-appellee Veronica Cuthill, a former U.K. citizen, gave birth to Tatiana Maria Diaz de Junguitu Ullah, a current U.K. resident and citizen. Cuthill later immigrated to the United States and became an LPR.

On September 29, 2016, Cuthill filed an I-130 petition for an F2A visa on behalf of her daughter, Diaz. On that day, Diaz was exactly 19 years 9 months and 6 days old. On September 27, 2017 — 363 days after filing — USCIS approved the petition. No F2A visas were available at the time, however, so Diaz was placed in the F2A queue, with a priority date of September 29, 2016. Diaz turned 21 on December 23, 2017 but — thanks to the CSPA — remained eligible for an F2A visa for 363 more days.

On June 25, 2018, while Diaz was still waiting for an F2A visa to become available, Cuthill naturalized as a U.S. citizen. At the time, Diaz was still statutorily

12

under 21 years old, based on the exclusion of 363 days of processing time from her biological age. As such, on July 13, 2018, Cuthill sought to convert Diaz's F2A petition to one for an immediate-relative visa, which would have no waiting time for Diaz to receive a visa. Instead, however, the Department of State notified Cuthill that, because Diaz's biological age was over 21 years old, she has been transferred from the F2A queue to the F1 queue.

This had a crushing effect on Diaz's prospects of obtaining a family-based visa: Had the government allowed Diaz to proceed as an immediate relative, she would likely have received her visa soon after her mother's naturalization, since immediate-relative visas are not subject to any queues. And even if Diaz had stayed in the F2A queue, she would likely have reached the front of the visa line several months later, by December 2018. But her placement in the F1 queue — which, as of January 2021, makes visas available only for beneficiaries with a priority date on or before September 15, 2014 — means that Diaz will have to wait many more years to receive a visa.

In 2019, Cuthill filed suit against the U.S. Secretary of State in the United States District Court for the District of Connecticut. In a thorough and well-

reasoned opinion, the district court (Hall, *J.*) granted summary judgment for Cuthill. The government timely appealed.

## STANDARD OF REVIEW

We review the grant of summary judgment *de novo*. *See Chunn v. Amtrak*, 916 F.3d 204, 207 (2d Cir. 2019). Because there are no genuine disputes over material facts, the issues in this appeal are entirely legal in nature.

## DISCUSSION

Our analysis proceeds as follows: First, we begin with the CSPA's text. We find that the CSPA's text favors Cuthill's position, although the government's text-based arguments are well taken. Second, we turn to the CSPA's structure. Here, we find that Cuthill's position better comports with the structure of the CSPA and the overall family-based visa scheme, though neither party's proposed reading of the statute is in complete harmony with the surrounding provisions. Third, we examine Congress's purpose in enacting the CSPA, and it is there that we find our clincher: The legislative history shows a clear desire by Congress to fix the age-out problem for *all* minor beneficiaries, and there is nothing to suggest that Congress intended to exclude beneficiaries like Diaz. Lastly, we address whether *Chevron* deference applies here and conclude that it does not.

**A. Text**

The key provision at issue, 8 U.S.C. § 1151(f)(2), provides:

> In the case of a petition [for an F2A visa], if the petition is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under subsection (b)(2)(A)(i), the determination [of whether the son or daughter meets the requirement that he or she be under 21] shall be made using the age of the alien on the date of the parent's naturalization.

The government argues that "the age of the alien on the date of the parent's naturalization" refers to a son or daughter's biological age on the date of the parent's naturalization; Cuthill argues that it means a son or daughter's statutory age, which excludes processing time.

The term "age," standing in isolation, normally means biological age. But the word "age" in the CSPA does not exist in a vacuum. Rather, it is part of an interlocking set of provisions, some of which employ the statutory age calculation. The dictionary is thus only a starting point. "[W]hen deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme. Our duty, after all, is to construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2015); *see also Corley v. United States*, 556 U.S. 303, 314 n.5 (2009) ("[T]he meaning — or ambiguity — of certain words or phrases may only become evident when placed in context."). So,

15

to understand the text of § 1151(f)(2), we must first look at three antecedent provisions.

First, 8 U.S.C. § 1101(b)(1) provides a general definition that, subject to certain complexities not relevant here, a "child" is "an unmarried person under twenty-one years of age." There can be no dispute that this refers to biological age.

Second, 8 U.S.C. § 1153(a)(2)(A) provides that F2A visas can be given to "children of [LPRs]." As we just saw, the default definition of "child" is a person under 21 years in biological age. Section 1153(a)(2)(A) thus *appears* to require that F2A visa beneficiaries must be under 21 in biological years.

But the third provision, 8 U.S.C. § 1153(h)(1), explicitly requires a different mechanism for determining a beneficiary's age for the purposes of F2A visas and one other visa category not relevant here. It provides:

> For purposes of [§ 1153(a)(2)(A), the provision discussed in the previous paragraph and which applies exclusively to F2A visas,] a determination of whether an alien satisfies the age requirement in [§ 1101(b)(1), the first provision discussed above which provides for a default definition of "child,"] shall be made using –
>
> (A) the age of the alien on the date on which an immigrant visa number becomes available for such alien . . . ; reduced by
>
> (B) the number of days in the period during which the [F2A petition] was pending.

16

*Id.* In other words, the CSPA dictates that, in determining whether an F2A beneficiary is a minor, we use a statutory formula rather than pure biological age.

With that in mind, we turn to § 1151(f)(2), the provision at issue. It provides that "[i]n the case of a petition [for an F2A visa]" that is converted to an immediate-relative visa due to the parent's naturalization, "the determination [of whether an alien satisfies the age requirement in § 1101(b)(1) — *i.e.*, whether he or she is under 21] shall be made using the age of the alien on the date of the parent's naturalization." *Id.* § 1151(f)(2). Because § 1151(f)(2) refers *solely* to F2A beneficiaries, and because Congress specifically provided for a modified age calculation for F2A beneficiaries, we conclude that the best textual reading of "the age of the [F2A beneficiary] on the date of the parent's naturalization" is that it refers to the F2A beneficiary's statutory age on such date.

The government advances several arguments in favor of its preferred reading, but we disagree with its hypertechnical construction of the CSPA.

The government first argues that a nearby provision in the CSPA, § 1151(f)(1), uses the word "age" to refer to biological age, and that the term "age" in § 1151(f)(2) therefore has the same meaning. But while we agree that "age" in § 1151(f)(1) refers to biological age, we do not take it as a given that "age" in

17

§ 1151(f)(2) must have the same meaning. The reason § 1151(f)(1) indisputably refers to biological age is that it deals solely with immediate-relative beneficiaries and does not apply to F2A beneficiaries. In other words, the beneficiaries discussed in § 1151(f)(1) are not subject to the F2A-specific age calculation, so there is no way to calculate their age except biologically. But § 1151(f)(2) is an *exception* to the general rule laid out in § 1151(f)(1). And it is an exception that applies *only* to F2A beneficiaries, for whom "age" is calculated differently. All that § 1151(f)(1) proves is the uncontroversial proposition that the word "age" standing alone means biological age. It does not compel the conclusion that "age" has the same meaning in the F2A-specific context, where Congress expressly provided for an alternative calculation formula.

The government next argues that, because § 1151(f)(2) and § 1153(h) lack any cross-references to each other, we cannot assume that § 1153(h)'s age-reduction formula is incorporated into § 1151(f)(2). But while no one will ever accuse the CSPA of being reader-friendly, there is still a clear textual path — albeit a circuitous one — leading from § 1151(f)(2) to § 1153(h)(1). First, § 1151(f)(2) expressly refers to "the [age] determination described in [§ 1151(f)(1)]." Jumping to § 1151(f)(1), its age determination expressly cross-references "the age

requirement in [§ 1101(b)(1)]" which provides the default rule for calculating age – *i.e.*, biological age. But, as we know, § 1101(b)(1) is modified for F2A beneficiaries. So if we keep following the trail, we see that § 1153(h)(1) expressly cross-references § 1101(b)(1) and provides that "[f]or purposes of [F2A visas], a determination of whether an alien satisfies the age requirement in [§ 1101(b)(1)] shall be made using" the statutory formula. This path thus leads from § 1151(f)(2) to § 1151(f)(1), to § 1101(b)(1), and back up to § 1153(h). So while the government's point stands, the lack of neat cross-references does not negate our textual reading of § 1151(f)(2). *See Tovar v. Sessions*, 882 F.3d 895, 901 (9th Cir. 2018) ("An explicit cross-reference is unnecessary when the three provisions are so closely related and form a cohesive whole.").

The government next argues that because § 1153(h)(1) provides that the age-reduction formula applies "[f]or purposes of subsection[] (a)(2)(A)," the reduction formula can apply only to beneficiaries who actually apply for F2A visas under subsection (a)(2)(A) once they become available, and not to beneficiaries who seek to roll over into immediate-relative status under § 1151(f)(2). But the government's own reading of the CSPA suffers from the same flaw. The government contends that because Diaz is over 21, she should be transferred to the F1 category. Though

19

the government does not say so expressly, it appears to contemplate that this transfer is prescribed by § 1153(h)(3), which provides:

> If the age of an alien is determined under [the F2A statutory formula] to be 21 years of age or older for the purpose[] of subsection[] (a)(2)(A) . . . the alien's petition shall automatically be converted to the appropriate category . . . .

But if we went by the government's narrow reading of the phrase "for the purpose[] of subsection[] (a)(2)(A)," then § 1153(h)(3) clearly does not apply to Diaz's current predicament. That is because, "for the purpose[] of subsection[] (a)(2)(A)," Diaz was still statutorily under 21 on the day that the government transferred her to the F1 queue. Thus, the bottom line is that both proposed interpretations must rely on similarly broad readings of the phrase "for purposes of subsection (a)(2)(A)."

In sum, based on our analysis of the interlocking provisions dealing with the word "age," we hold that the text of § 1151(f)(2) favors Cuthill's position. But this is not a case that can be conclusively resolved on plain text alone. *See Tovar*, 882 F.3d at 900 ("[T]he text of § 1151(f)(2), standing alone, does not say which age controls . . . ."). We thus turn to the broader structure of the CSPA to better understand the text of § 1151(f)(2).

## B. Statutory Scheme and Structure

Where the plain text does not conclusively resolve the question, we can draw upon a variety of interpretive tools, including statutory structure, to discern the text's meaning and purpose. *See United States v. Davis*, 961 F.3d 181, 187 (2d Cir. 2020). This is because "[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *King*, 576 U.S. at 492. In examining the broader scheme and structure of the CSPA, we are mindful of the well-established rule that "absurd results are to be avoided." *McNeill v. United States*, 563 U.S. 816, 822 (2011).

Our analysis of the statutory structure supports Cuthill's position. Three core structural principles permeate the CSPA and the family-based visa scheme: (1) bureaucratic processing time should not count against child beneficiaries' ages; (2) sons and daughters of citizens receive preference over sons and daughters of LPRs; and (3) minor children receive preference over adult sons and daughters. As discussed below, the government's proposed reading contravenes all three, leading to absurd results: (1) processing time *would* count against Diaz's age; (2) Diaz would be in a *worse* position because her mother naturalized; and (3) Diaz

21

would be in a *worse* position because she originally petitioned as a child rather than as an adult. Each is explained below.

First, one of the CSPA's core principles is that administrative processing time should not count in the age determination *both* for an immediate-relative beneficiary *and* for an F2A beneficiary. *See* 8 U.S.C. §§ 1151(f)(1), 1153(h). Yet, the government is effectively contending that the CSPA — for no discernible reason — *sub silentio* maintained the pre-CSPA age-calculation regime for one subset of F2A applicants. The government's reading would leave a sizable hole in the CSPA's age-out protections. *See King*, 576 U.S. at 493 ("We cannot interpret federal statutes to negate their own stated purposes.").

Second, there is no question that the statutory scheme gives preference to sons and daughters of citizens over sons and daughters of LPRs. The most obvious example is that minor children of citizens do not have to wait in any queue, unlike minor children of LPRs. *Compare* 8 U.S.C. § 1151(b), *with id.* § 1153(a). The government's reading turns this principle on its head: If Cuthill had remained an LPR instead of becoming a citizen, her daughter would have stayed in the relatively short F2A queue and her visa would have become available in 2018. But because her mother became a citizen, Diaz was relegated to the much longer F1

22

queue and will have to wait many more years for a visa. Penalizing people for becoming citizens runs counter to the entire family-based visa scheme.

Third, a key structural principle of the CSPA and U.S. immigration law is that minor children get preference over adult sons and daughters. *See Fiallo v. Bell*, 430 U.S. 787, 788 (1977) (noting that immigration law "grants special preference immigration status to aliens who qualify as the children . . . of United States citizens or lawful permanent residents"). One manifestation of this principle is the fact that minor sons and daughters of LPRs can wait in the short F2A queue while adult sons and daughters of LPRs must instead wait in the much longer F2B queue. But consider the government's reading of the CSPA: If a parent petitions for an F2B visa for their adult son or daughter and later naturalizes, the CSPA gives the beneficiary the option of either staying in the F2B queue or switching to the F1 queue. *See* 8 U.S.C. § 1154(k). By contrast, if that same parent had petitioned for an F2A visa for a *minor* child and later naturalizes when the child is biologically over 21 (but would have remained eligible for an F2A visa due to her statutory age), the government's reading says that the child has no options: she gets automatically transferred to the F1 queue. The lack of an opt-out makes sense under Cuthill's reading because immediate-relative status is generally considered the *crème-de-la-*

*crème* of family-based visas. But the government's reading leads to a highly unlikely result where the CSPA *penalizes* child beneficiaries like Diaz by denying them the opt-out provision that is afforded to adult beneficiaries.

The strongest structural argument for the government is that the age-reduction formula does not mesh perfectly with Cuthill's reading of § 1151(f)(2). One of the key inputs in the age-reduction formula is "the date on which an immigrant visa number becomes available for [the minor beneficiary]." 8 U.S.C. § 1153(h)(1)(A). It is from this date that one deducts processing time. *Id.* § 1153(h)(1)(B). Further, the age-reduction formula provides that it applies in the context of an F2A visa petition "only if the [beneficiary] has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of [when an immigrant visa becomes available]." *Id.* § 1153(h)(1)(A). But immediate-relative visas are *always* available, creating a conundrum if we accept Cuthill's argument that the age-reduction formula applies to F2A beneficiaries who convert to immediate-relative beneficiaries: What should be considered the availability date?

There are two potential solutions. To begin with, we do not hold that § 1151(f)(2) necessarily incorporates § 1153(h) lock, stock, and barrel, including the

timely application requirement. We need not decide, and do not decide, whether those elements are incorporated into § 1151(f)(2). Our holding is more limited, concluding only that § 1151(f)(2) incorporates the basic age-reduction formula — *i.e.*, the notion that you take the beneficiary's current age and deduct processing time. This basic formula exists independently of the availability and application requirements, as illustrated by Diaz's own case: For the 363 days after her biological twenty-first birthday, the age-reduction formula allowed her to remain in the F2A queue — even though a visa had not become available and she had not applied for one. In other words, § 1153(h) allows an F2A beneficiary to take advantage of the age-reduction formula even though the availability and application requirements have not yet come into play. It is this concept that 1151(f)(2) incorporates when it refers to the age of an F2A beneficiary.

And even if § 1151(f)(2) does incorporate the availability requirement, we agree with the district court that, in the context of § 1151(f)(2), the visa availability date could simply be interpreted as referring to the date of the parent's naturalization. After all, that is the date on which the relevant visa — which, in the context of § 1151(f)(2), is an immediate-relative visa — became available. We need

25

not resolve this issue in this appeal, but suffice it to say that it does not pose an insurmountable obstacle to Cuthill's interpretation of § 1151(f)(2).

The government next argues that Cuthill's reading — that F2A petitioners in Diaz's situation roll over to the immediate-relative category rather than to the F1 category — actually hurts F2A beneficiaries, because F2A and F1 beneficiaries can bring their own minor children as derivative beneficiaries, *see id.* § 1153(d), but immediate relatives cannot. But even if this were considered a downgrade (which, given the choice between a long F1 queue and rapid receipt of an immediate-relative visa, it likely is not), it is one that Congress expressly contemplated in § 1151(f)(2): If an F2A beneficiary is under 21 years old biologically when her parent naturalizes, the F2A petition can be "later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative . . . ." *Id.* § 1151(f)(2). Congress made a common-sense judgment that the immediate-relative category is far preferable to the F2A category even if that means losing the ability to bring derivative beneficiaries.[5]

---

[5] Relatedly, the government argues that it is not always the case that the F2A-to-F1 switch is detrimental to visa beneficiaries. It points out that in 2001, around the time that the CSPA was enacted, the F1 queue was actually shorter than the F2A queue. But this argument misses the point: The relevant choice at issue is not between staying in the F2A queue and switching to the F1 queue, but

Finally, the government argues that the F2A-to-immediate-relative switch is incongruent with the broader statutory scheme because § 1153(h) contemplates rollovers only within preference categories — *i.e.*, between F2A and F2B. But this argument, too, is contradicted by § 1151(f)(2). There is no dispute that § 1151(f)(2) expressly provides for an F2A-to-immediate-relative switch if an F2A beneficiary is biologically under 21 years old when her parent naturalizes. Cuthill merely seeks to apply this existing mechanism to a subset of F2A beneficiaries. If anything, it is the *government's* proposed switch that is without precedent, as there is no express statutory F2A-to-F1 mechanism in the CSPA. *See Tovar*, 882 F.3d at 903 ("Neither the regulation nor the statute authorizes the result the government advocates here: conversion of an F2A petition into an F1 petition.").

In sum, while Cuthill's reading is not free of complications, it is far more consistent with the CSPA's overall scheme and structure than the alternative proposed by the government. The government's reading turns the CSPA on its head, contravenes three core features of our nation's family-based visa scheme,

_____

between switching to the F1 queue or switching *to the immediate-relative category*. These are the outcomes that the parties advocate for: The government says Diaz should go the F1 queue; Cuthill says Diaz should go to the immediate-relative category. As between these two options, there can be little doubt that the immediate-relative category is a far preferable route for the reason set forth above.

and yields the bizarre result of penalizing people for becoming U.S. citizens. *See id.* at 899 (concluding that the government's position leads to an "absurd result" where "because [the F2A beneficiary]'s father became a citizen, [he] must now wait decades longer for a visa than if his father had remained an LPR").

### C. Purpose

In addition to the text and structure of the statute, Congress's purpose in enacting the CSPA — as reflected in the legislative history — can help us decipher the meaning of the statutory language. *See Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1072 (2020). "Congress passes legislation with specific purposes in mind. When the ordinary tools of statutory construction permit us to do so, we must attempt to discover those purposes." *In re WorldCom, Inc.*, 723 F.3d 346, 360 (2d Cir. 2013).

While the government has raised colorable textual and structural arguments, we find that the purpose and history of the CSPA overwhelmingly favor Cuthill's reading of § 1151(f)(2). There is no dispute that Congress enacted the CSPA because it wanted to protect child beneficiaries from aging out of their age-dependent child visas. There is no indication whatsoever that Congress wanted to single out beneficiaries like Diaz for exclusion from the CSPA's anti-

28

aging-out remedies. The government does not proffer any reason — nor could it — why Congress would want to do so.

While reliance on legislative purpose is sometimes criticized on the ground that Congress is a divided body that does not speak with a single voice or purpose, that critique does not apply here. It is hard to imagine a piece of legislation that speaks with more unmistakable clarity of purpose than the CSPA. *See McCreary Cnty. v. Am. C.L. Union of Ky.*, 545 U.S. 844, 862 (2005) ("[S]crutinizing purpose does make practical sense . . . where an understanding of official objective emerges from readily discoverable fact, without any judicial psychoanalysis of a drafter's heart of hearts.").

The CSPA was motivated by bipartisan frustration with the fact that children were losing out on visas due to years-long processing delays. The legislation was co-sponsored by representatives of both major parties, passed the House of Representatives by a unanimous 416-0 vote, passed unanimously in the Senate Judiciary Committee after the addition of an amendment, passed the Senate by a unanimous voice vote, passed the House again by a unanimous voice vote, and signed into law by President George W. Bush. Senators and House members of both parties spoke in support of the legislation, and all of them focused on the

same theme: Children should not lose their coveted status due to agency processing time.

By way of a sampling, the House Report describes the CSPA's purpose as "address[ing] the predicament of these aliens, who through no fault of their own, lose the opportunity to obtain an immediate relative visa before they reach age 21." H.R. Rep. No. 107-45, at 2 (2001), reprinted in 2002 U.S.C.C.A.N. 640, 641. The Democratic co-sponsor in the House, Representative Sheila Jackson-Lee, said that the CSPA "corrects the problem of aging-out under current law," under which "once children reach 21 years of age, they are no longer considered immediate relatives . . . [and] are placed in the back of the line of one of the [] backlog family-preference categories of immigrants." 147 Cong. Rec. H2902, 2001 WL 617985 (2001). The Republican co-sponsor in the House, Representative George Gekas, likewise spoke of the need to prevent children from being "thrown into a completely different category" due to no fault of their own and causing them to "wait years for final adjudication of that particular status." *Id.* Senator Dianne Feinstein, who proposed the Senate amendment, likewise said that the CSPA "would protect children who are in danger of losing their eligibility for an

immigration visa" due to processing time. 147 Cong. Rec. S3275, 2001 WL 314380 (2001).

To be fair, Congress focused more frequently on the aging out of children of U.S. citizens who petition for immediate-relative visas — *i.e.*, the problem that was fixed by § 1151(f)(1). By comparison, the fate of F2A beneficiaries — which was addressed by § 1151(f)(2) and § 1153(h) — appears to have been less frequently mentioned. Nevertheless, the legislative record shows that Congress intended to protect all minor beneficiaries, and there is no indication whatsoever that Congress aimed to exclude any subset of minor beneficiaries from the CSPA's protections.[6]

In sum, the legislative history and purpose of the CSPA overwhelmingly support the incorporation of the age-reduction formula into § 1151(f)(2) in Diaz's case. Congress unmistakably intended that F2A beneficiaries should not be

---

[6] In case there is any lingering doubt that Congress intended to eliminate all "age-out" situations, the later words of some of the legislators involved also support our interpretation. A bipartisan group of then-current and former senators wrote in an amicus brief submitted to the Supreme Court — with emphasis in original — that they "crafted the CSPA to protect *all* children who seek to immigrate to this country from the consequences of 'aging out,' that is, turning 21 before a green card is available for them." Brief of Current and Former Members of Congress as Amici Curiae in Support of Respondents, *Scialabba v. Cuellar de Osorio*, 573 U.S. 41 (2014), 2013 WL 5935166, at *1. Of course, such after-the-fact statements are of very limited value, but they serve as further confirmation that Congress intended the CSPA to fix all age-out situations.

penalized by (1) administrative processing time or (2) their parents' naturalization. The case before us presents a unique combination of the two, but there is no reason to think that Congress intended the result to be different. Thus, to the extent there is any remaining textual ambiguity about the meaning of the phrase "the age of the alien on the date of the parent's naturalization," the legislative history clearly shows us the way.

At the end of the day, the strongest argument for the government is this: Congress wanted to fix the age-out problem for all minor beneficiaries, but while doing so, it overlooked one scenario — Diaz's — and failed to legislate a fix for it. If this were the case, we would agree that it would be up to Congress, not the courts, to repair the oversight, and certainly if our analysis is wanting, Congress is in a position to fix any oversight. But we do not think that is the case here. In affirming the district court, we do not hold that Congress *would have* legislated a fix for Diaz's predicament had it been aware of it. Rather, we hold — based on the text, structure, purpose, and legislative history of the CSPA — that Congress *did* legislate a fix via § 1153(h)(1) and § 1151(f)(2).

**D. Chevron Deference**

Lastly, the government argues that we should defer to the decision by the Board of Immigration Appeals ("BIA") in *Matter of Zamora-Molina*, 25 I. & N. Dec. 606, 611 (B.I.A. 2011), in which the BIA adopted the same interpretation as the Department of State. Even assuming, without deciding, that *Chevron* deference applies when one agency (the Department of State) seeks to rely on the interpretation of another agency (the Department of Justice), we agree with the district court and with the Ninth Circuit that *Chevron* deference does not apply here because "the intent of Congress is clear." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984); *see also id.* at 842–43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."); *Tovar*, 882 F.3d at 900 (declining to apply *Chevron* deference to *Zamora-Molina* because "traditional tools of statutory construction" and "the irrationality of the result sought by the government" combine to "demonstrate beyond any question that Congress had a clear intent on the question at issue"). As discussed above, the text, structure, and

legislative history of the CSPA conclusively show the "unambiguously expressed intent of Congress" to protect beneficiaries like Diaz. *Chevron*, 467 U.S. at 843.[7]

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

---

[7] This conclusion is bolstered by the fact that the BIA's analysis in *Zamora-Molina* does not purport to resolve any ambiguity. Rather, the BIA matter-of-factly concluded that the age-reduction formula clearly does not apply to § 1151(f)(2) based on a perfunctory review of the relevant provisions. *See Zamora-Molina*, 25 I. & N. Dec. at 610–11. This differentiates *Zamora-Molina* from the BIA decision that received *Chevron* deference in *Scialabba*. *See* 573 U.S. at 75. There, unlike in *Zamora-Molina*, the BIA recognized the statute's ambiguity and conducted a lengthy analysis of the text, structure, and legislative history of the CSPA provision at issue. *See Matter of Wang*, 25 I. & N. Dec. 28, 33 (B.I.A. 2009).