<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DEBBI POTTS, a Colorado resident,

    Plaintiff - Appellant,

v.

CENTER FOR EXCELLENCE IN
HIGHER EDUCATION, INC., an Indiana
corporation, f/k/a CollegeAmerica Denver,
Inc.,

    Defendant - Appellee.

No. 17-1143

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CV-01779-RBJ)**
_____

Brandon J. Mark, Parsons Behle & Latimer, Salt Lake City, Utah (Logan R. Martin,
Westerfield & Martin, Denver, Colorado, with him on the briefs), for Plaintiff-Appellant.

Steven M. Gombos, Ritzert & Leyton, P.C., Fairfax, Virginia (Raymond W. Martin,
Wheeler Trigg O'Donnell, LLP, Denver, Colorado, David A. Obuchowicz and Jacob C.
Shorter, Ritzert & Leyton, P.C., Fairfax, Virginia, with him on the brief), for Defendant-
Appellee.
_____

Before **LUCERO**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

The False Claims Act imposes liability on any person who knowingly defrauds the federal government. *See* 31 U.S.C. § 3729(a). The Act includes a provision protecting whistleblower employees from specified retaliatory acts by their employer. 31 U.S.C. § 3730(h)(1)–(2). We now consider whether this anti-retaliation statute applies when no retaliatory discrimination occurs until after employment ends. We conclude that it does not. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's dismissal of Debbi Potts's retaliation claim.

## BACKGROUND

From January 2009 until July 2012, when she resigned, Debbi Potts worked as the campus director of the Cheyenne, Wyoming campus of CollegeAmerica Denver, Inc. (CollegeAmerica), a predecessor of the Center for Excellence in Higher Education, Inc. (the Center). Potts alleges that she resigned because CollegeAmerica's business practices were unethical. In particular, she alleges that CollegeAmerica violated its accreditation standards and "actively deceiv[ed]" its accreditor to maintain accreditation. Appellant's App. at 10 ¶ 12.

In September 2012, Potts and CollegeAmerica entered a written agreement by which CollegeAmerica agreed to pay Potts $7,000 and support her unemployment claim, and Potts agreed to (1) "refrain from personally (or through the use of any third party) contacting any governmental or regulatory agency with the purpose of filing any complaint or grievance," (2) "direct any complaints or issues against CollegeAmerica . . . to CollegeAmerica's toll free compliant [sic] number," and

(3) "not intentionally with malicious intent (publicly or privately) disparage the reputation of CollegeAmerica." Appellant's App. at 44.

Despite the agreement, Potts disparaged the Center in an e-mail she sent to another former employee of the Center.[1] After learning of this, the Center sued Potts in Colorado state court for violating the agreement. For relief, the Center sought back the $7,000 it had paid to Potts under the agreement.

In February 2013, Potts sent a written complaint to the Center's accreditor, the Accrediting Commission of Career Schools and Colleges (ACCSC), concerning the Center's alleged deceptions in maintaining its accreditation. After learning this, the Center amended its state-court complaint to add one sentence in support of its existing, sole claim (for breach of contract): "Potts also violated the contract by filing a complaint with the ACCSC." Appellant's App. at 50.

In response, Potts sued the Center in the United States District Court for the District of Colorado, alleging that the Center's state claim violated the False Claims Act's anti-retaliation provision. *See* 31 U.S.C. § 3730(h)(1). In particular, Potts alleged that her complaint to the Center's accreditor was protected activity under the False Claims Act because it revealed violations of accreditation standards, which would have disqualified the Center from receiving federal student financial aid. Potts further alleged that the Center had retaliated against her under the Act by amending

---

[1] We are uncertain when Potts sent this e-mail.

3

its state claim to allege that Potts had breached the agreement by sending the complaint to ACCSC.

The Center filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Potts's federal suit. After a hearing, the district court granted the motion, concluding that a former employee—one whose allegedly protected acts had occurred exclusively after employment ended—could not rely on the False Claims Act's anti-retaliation provision. *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 244 F. Supp. 3d 1138, 1144 (D. Colo. 2017). Potts appealed.

## DISCUSSION

### A. Standard of Review

We review de novo a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1167 (10th Cir. 2010). "We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." *Sec. & Exch. Comm'n v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). Here, the district court dismissed Potts's claim based on the court's construction of the False Claims Act. We review de novo a district court's statutory construction. *United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1246 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 1298 (2018).

### B. Statutory Interpretation

When interpreting a statute, "our primary task is to 'determine congressional intent, using traditional tools of statutory interpretation.'" *United States ex rel.*

4

*Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 710 (10th Cir. 2006) (quoting *McGraw v. Barnhart,* 450 F.3d 493, 498 (10th Cir. 2006)). We begin with the language of the statute itself. *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014). "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Ceco Concrete Constr., LLC v. Centennial State Carpenters Pension Tr.*, 821 F.3d 1250, 1258 (10th Cir. 2016) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). Our inquiry ends there "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson*, 519 U.S. at 340 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)). We evaluate statutory language by examining "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Ceco Concrete Constr.*, 821 F.3d at 1258 (quoting *Robinson*, 519 U.S. at 341).

## C. The False Claims Act

The False Claims Act imposes liability on any person who knowingly makes a false claim for payment to the federal government. 31 U.S.C. § 3729(a). Because "employees will often be in the best position to report frauds perpetrated by their employers," the statute includes a whistleblower provision to protect employees from retaliation. *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 703 (10th Cir. 2012). The two key subsections of the anti-retaliation provision provide as follows:

> **(1) In general.**—Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner

5

discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

**(2) Relief.**—Relief under paragraph (1) shall include reinstatement with the same seniority status that employee . . . would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided by this subsection.

31 U.S.C. § 3730(h)(1), (2).

We must decide what persons qualify as "employees" under § 3730(h)(1). We conclude that "employees" includes only persons who were current employees when their employers retaliated against them. If that condition is met, it doesn't matter whether the employee remains a current employee of the employer when suing. So the label "former employee" itself means nothing—what matters is the employee's employment status when the employer retaliates.

We reach this conclusion by examining the wording of § 3730(h)(1). That subsection sets forth the qualifying retaliatory acts—discharge, demotion, suspension, threats, harassment, or any other manner of discrimination in the terms and conditions of employment. Of these six categories of retaliatory acts, four, by their nature or wording, *must* occur during employment (as must the protected activity). Obviously, a former employer cannot discharge, suspend, or demote a former employee. Nor can a former employer discriminate against a former employee in the terms and conditions of employment.

6

Potts acknowledges this but asserts, as a general matter, that a former employer can threaten or harass its former employees (we note, as anyone can threaten or harass anyone else). From this, she argues that under § 3730(h)(1) the term "employee" is ambiguous about whether it protects former employees who are threatened or harassed by their former employers. Under Potts's view, § 3730(h)(1) covers this situation, even when the whistleblowing comes after employment ends.

The district court acknowledged the truism that "a company could threaten or harass a former employee just as it could a current employee[.]" Appellant's App. at 144. But it concluded that "it would be anomalous for two of the six listed retaliatory acts to cover former employees while the rest do not." *Id.* at 144–45. In treating the six retaliatory acts the same, the district court relied on the associated-words canon (*noscitur a sociis*). *Id.* at 145 (citing *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) ("The traditional canon of construction, *noscitur a sociis*, dictates that 'words grouped in a list should be given related meaning.'" (quoting *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)))).

We agree that the associated-words canon applies here. This canon recognizes "the observed phenomenon that birds of a feather flock together." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012). "When several nouns or verbs or adjectives or adverbs—any words—are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." *Id.* "The canon especially holds that 'words grouped in a list should be given related meaning.'" *Id.* In view of

7

this, and with Congress having snugly embedded "threatened" and "harassed" within the other four retaliatory acts needing to occur during employment, we cannot apply a different temporal range for those two terms than applies for their four neighbors. On just that basis, we would affirm.[2]

But we buttress this conclusion by applying the *ejusdem generis* canon to § 3730(h)(1)'s listing. *Ejusdem generis* applies here because Congress "has tacked on a catchall phrase at the end of an enumeration of specifics[.]" Scalia & Garner, *supra*, at 199. As an example, the authors use "*dogs, cats, horses, cattle, and other animals.*" *Id.* They then ask whether wild animals, horseflies, and protozoa qualify as "other animals." *Id.* Ultimately, they treat the catchall phrase as meaning "other similar animals," noting that *ejusdem generis* "implies the addition of *similar* after the word *other.*"

Using that same approach in examining § 3730(h)(1), we read its residual clause as including "similar discriminations" as discharge, demotion, suspension, threats, and harassment.[3] Discriminatory acts similar to threats and harassment are actionable only if those acts occur in the terms and conditions of employment. *Id.* We

---

[2] Under Potts's interpretation, a former employee could wait years upon years before whistleblowing and then sue if the employer allegedly retaliated in one of the six listed manners under § 3730(h)(1). In our view, any such open-ended litigation option also weighs against her interpretation.

[3] This aligns with the district court's view that "reading 'employee' to mean 'current employee' is especially fitting in light of § 3730(h)(1)'s catchall residual clause, which covers 'other' actions that *likewise* 'discriminate[] . . . in the terms and conditions of employment.'" *Potts*, 244 F. Supp. 3d at 1142 (alterations in original) (quoting 31 U.S.C. § 3730(h)(1)).

8

can't see why close cousins to threats and harassment would count only during employment (i.e., when in the terms and conditions of employment), but threats and harassment would continue to count years after employment ends.

Next, addressing whether an additional, independent ground supports affirmance, we turn to the words "in the terms and conditions of employment" at the end of the residual clause. The question is whether these words modify only "in any other manner discriminate against," or whether they also reach back and modify each of the five preceding retaliatory acts.[4] Here, we apply the series-qualifier canon—"[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." Scalia & Garner, *supra*, at 147. On this point, we conclude that the six verbs are parallel—discharged, demoted, suspended, threatened, harassed, or discriminated against. We do not believe the prepositive "in any other manner" or the postpositive "in the terms and conditions of employment" makes the verb string not parallel.[5]

---

[4] Potts contends that the last-antecedent canon applies to tie "in the terms and conditions of employment" solely to "in any manner discriminated against." Appellant's Br. at 29 (citing *Mansur v. PFL Life Ins. Co.*, 589 F.3d 1315, 1320 (10th Cir. 2009) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26–27 (2003)). This canon does not apply—no relative pronoun and antecedent exist in the disputed language in § 3730(h)(1). *See* Scalia & Garner, *supra*, at 144.

[5] The nearest-reasonable-referent canon applies when the series is not parallel. In that circumstance, the "prepositive or postpositive modifier normally applies only to the nearest reasonable referent." Scalia & Garner, *supra*, at 152. As an example of a nonparallel series, the authors point to this statutory language: "the provisions of this act shall not be construed to prevent any person from manufacturing for his domestic consumption *at his home* . . . wine or cider from fruit of his own

9

Even so, we agree with Potts that the series-qualifier canon's ordinary result doesn't apply here. Though we can read as sensible "threaten in the terms and conditions of employment" (e.g., an employer telling the whistleblowing employee that it never advances nonloyal workers with the company unless they retract their whistleblowing) and "harass in the terms and conditions of employment" (e.g., an employer strictly enforcing work rules against a whistleblowing employee but not against others), we cannot sensibly read "discharge (or demote or suspend) in the terms and conditions of employment." So though the continuing-series canon ordinarily would give a different result, we conclude that "in the terms and conditions of employment" modifies only "in any other manner discriminated against."

Subsection 3730(h)(2) also supports this conclusion that "employees" under § 3730(h)(1) includes persons who were current employees when retaliated against. The listed remedies for an employer's violation of subsection 3730(h)(1) all relate to an employment relationship. Under subsection 3730(h)(2), the available relief "shall include" reinstatement with the same seniority status, two times the back pay, interest

---

raising . . . ." *Id*. (quoting *Harris v. Commonwealth*, 128 S.E. 578, 579 (Va. 1925)). The question was whether "at his home" modified manufacturing, or consumption, or both. *Id*. The authors concluded that "both manufacturing and consumption are nouns, but are not nouns in parallel; the second is in a prepositional phrase modifying the first." *Id*. at 153. So the authors interpreted "at his home" as modifying its closest neighbor, consumption. *Id*. By contrast, § 3730(h)(1)'s list uses six present-tense, passive verbs, each performing the same grammatical function.

on back pay, and special damages resulting from the discrimination.[6] Potts points to "shall include" as a way out from under the employment-related-relief limitation. Appellant's Br. at 48 (quoting 31 U.S.C. § 3730(h)(2)). Though the "shall include" allows unspecified other employment-related relief, we do not construe it to reach relief beyond employment-related relief.

Potts argues against this interpretation by pointing us to the anti-retaliation provision in the Sarbanes-Oxley Act, 18 U.S.C. § 1514A(a). Indeed, that Act's language parallels the False Claims Act's language quoted above:

> **Whistleblower Protection for Employees of Publicly Traded Companies.**—No company . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee [to assist in an investigation into an alleged violation of federal law relating to fraud against shareholders].

18 U.S.C. § 1514A(a). Potts cites two circuit cases noting the obvious similarity in language to the False Claims Act. But those cases involve a different issue, the availability of noneconomic damages. *See Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 672 (4th Cir. 2015) (allowing noneconomic damages for violation of the Sarbanes-Oxley Act whistleblower provision relying on similar relief and language from the False Claims Act); *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 265 (5th Cir. 2014) (same).

---

[6] In our view, this reference to "discrimination" ties back to subsection (h)(1)'s "discriminated against in the terms and conditions of employment."

More importantly, Potts argues that the Department of Labor shares her view that this similar statutory language from the Sarbanes-Oxley Act applies to "former employees" like her—those persons retaliated against solely after the employment ended. Appellant's Br. at 16. In support, she cites one of the Department's regulations:

> As used in this part:
>
> . . . .
>
> (e) Complainant means the employee who filed a complaint under the Act or on whose behalf a complaint was filed.
>
> (f) Covered person means any company, including any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company, or any nationally recognized statistical rating organization, or any officer, employee, contractor, subcontractor, or agent of such company or nationally recognized statistical rating organization.
>
> (g) Employee means an individual *presently or formerly working for* a covered person, an individual applying to work for a covered person, or an individual whose employment could be affected by a covered person.

29 C.F.R. § 1980.101 (emphasis added). We are uncertain whether this regulation means to protect former employees whose whistleblowing occurs solely after employment. In other words, this regulation may simply recognize what we have already conceded here—that a former employee could sue for retaliatory discrimination occurring during employment. For the reasons stated above, we cannot conclude that the False Claims Act language reaches that variety of "former employee" who suffered retaliatory discrimination after her employment ended.

12

Potts provides no other answer to our statutory interpretation apart from contending that our reading would run counter to *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997). In that case, the Court interpreted Title VII's anti-retaliation provision:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

In *Robinson*, a fired employee later filed an Equal Employment Opportunity Commission (EEOC) complaint alleging race discrimination. 519 U.S. at 339. Robinson's employer knew about the EEOC filing some time before it allegedly gave a poor evaluation of him to a prospective employer. *Id.* So the Court had to decide whether "the term 'employees' in [42 U.S.C. § 2000e-3(a)], includes former employees, such that petitioner may bring suit against his former employer for postemployment actions allegedly taken in retaliation for petitioner's having filed a charge with the Equal Employment Opportunity Commission." *Id.*

The Court began by noting that "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341 (citations omitted). For three reasons, the Court concluded unanimously that "employee" was "ambiguous as to whether it excludes former employees." *Id.*

First, the Court noted that "there is no temporal qualifier in the statute such as would make plain that [§ 2000e-3(a)] protects only persons still employed at the time of the retaliation." *Id.* Second, the Court noted that "Title VII's definition of 'employee' likewise lacks any temporal qualifier and is consistent with either current or past employment"—simply defining employee as "an individual employed by an employer." *Id.* at 342 (quoting 42 U.S.C. § 2000e(f)). Third, the Court noted that "a number of other provisions in Title VII use the term 'employees' to mean something more inclusive or different than 'current employees.'" *Id.* Having found "employee" ambiguous, the Court resolved the ambiguity in favor of that term's including former employees. *Id.* at 345. Because it was more consistent with the broader context of Title VII and the purpose of the anti-retaliation provision, the Court held that the provision applied to post-employment retaliation against former employees. *Id.* at 346.

As we have discussed, the False Claims Act, by its list of retaliatory acts, temporally limits relief to employees who are subjected to retaliatory acts while they are current employees. Thus, this subsection expressly sets a temporal limitation— the retaliatory discrimination must occur during the employment. Section 2000e-3(a) has no corresponding limitation.[7]

_____

[7] Potts describes "the exact text of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3, [as] somewhat different from the text of § 3730(h)." Appellant's Br. at 20. For the reasons given, we believe that Potts understates the statutory differences. In effect, Potts asserts that the Court would have decided *Robinson* the same even with § 3730(h)(1)–(2)'s language—we disagree.

Nor has Potts addressed how *Robinson*'s remaining considerations would weigh in her favor. The district court noted that "Ms. Potts identifies no other provisions of the [False Claims Act] in which 'employees' means anything other than 'current employees.'" *Potts*, 244 F. Supp. 3d at 1144. On appeal, Potts cites 31 U.S.C. § 3730(h) as prohibiting employers from discharging whistleblowing employees. But this argument relies on a point the district court agreed with—that current employees terminated for protected activity occurring during employment may pursue their rights (though then of course as former employees) under § 3730(h)(1). *See id.* at 1142. Potts points to nothing in the False Claims Act speaking to the other kind of former employee—one like herself whose protected activity exclusively postdates the employment relationship.

We conclude that the False Claims Act's anti-retaliation provision unambiguously excludes relief for retaliatory acts occurring after the employee has left employment.[8] So our inquiry ends there.[9] Because Potts alleges that the Center

---

[8] The same result applies whether the whistleblowing occurs during employment, or as in Potts's case, after employment.

[9] We have no occasion to reach the policy arguments Potts makes in favor of protecting whistleblowers. Because § 3730(h)(1) unambiguously provides no remedy for a former employee's post-employment whistleblowing, these policy arguments are for Congress.

retaliated against her after she resigned her employment, she cannot have a cognizable claim under the statute.[10]

## CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Potts's retaliation claim.

---

[10] Because we rule on this basis, we have no need to rule on the Center's other defenses—that Potts's claim failed to meet the three-year statute of limitations set forth at 31 U.S.C. § 3730(h)(3) and that Potts inadequately pleaded a claim.