**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 10, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

DALILA DEKOVIC; ALEJANDRO
JIMENEZ RAMIREZ,

     Plaintiffs - Appellants,

v.

MARCO RUBIO, United States Secretary
of State; CATHERINE MCGEARY,
Director, National Visa Center, United
States Department of State,

     Defendants - Appellees.

No. 24-1431

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:23-CV-02728-REB)**
_____

Mark Robert Barr, Lichter Immigration, Denver, Colorado, for Plaintiffs-Appellants.

Christopher G. Gieger, Trial Attorney (Lindsay M. Vick, Senior Litigation Counsel, and
Jessica A. Dawgert, Senior Litigation Counsel, Office of Immigration Litigation, with
him on the brief), United States Department of Justice, Washington, D.C., for
Defendants-Appellees.
_____

Before **McHUGH**, **CARSON**, and **ROSSMAN**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

This appeal presents a question that has been considered by three of our sister circuits: whether "a child of a lawful permanent resident (LPR) who was deemed by statute to be a minor child until the very day his [parent] naturalized, still qualified as a minor on that day, or whether instead his [parent's] naturalization transformed him on the spot from a minor into an adult." *Tovar v. Sessions*, 882 F.3d 895, 896 (9th Cir. 2018). As the Ninth Circuit explained in *Tovar*, the Government has

> parsed individual provisions of the labyrinthine Immigration and Nationality Act to arrive at the latter position, with the effect that a parent's naturalization can cause a child to be deported forthwith and to wait for decades in a foreign land for an immigrant visa—a visa that he would have had in a short period of time if his parent had not become a citizen.

*Id.* But viewing the statute as a whole, we reject this interpretation. Instead, we agree with our sister circuits that

> anyone who under the relevant statutes is considered a minor child of an LPR on the date of the parent's naturalization (and who is the beneficiary of a valid petition for an immigrant visa based on that status) can obtain a visa as the minor child of a citizen following his parent's naturalization.

*Id.* at 896–97.

We therefore reverse the district court's entry of judgment in favor of the Government and remand for further proceedings consistent with this opinion.

## I.    LEGAL OVERVIEW

To properly evaluate the issue before us in this appeal, "we need to review not only the various steps in the process of seeking a visa but also the special rules that apply to each of the distinct types of visas that are in play." *Teles de Menezes v. Rubio*, 156 F.4th 1, 3 (1st Cir. 2025). We therefore "spend some time up front

2

working through the relevant statutory provisions, technical though they are, before then turning back to the case at hand." *Id.*

Federal law establishes several categories of immigrant visas that LPRs and citizens of the United States can seek on behalf of their family members. *See Cuthill v. Blinken*, 990 F.3d 272, 274 (2d Cir. 2021). When an LPR or citizen, referred to in this context as the "sponsor," seeks a visa for an unmarried son or daughter, referred to in this context as the "beneficiary," the visa will fall into one of four categories. *Id.* These four visa categories, also referred to as preference categories, are determined based on the sponsor's citizenship status and the beneficiary's age. *See id.* As the Second Circuit explained in *Cuthill*, these four categories consist of the following:

- Immediate-relative visa: for minor (under 21) sons and daughters of citizens.

- F1 visa: for adult (21 and over) sons and daughters of citizens.

- F2A visa: for minor (under 21) sons and daughters of LPRs.

- F2B visa: for adult (21 and over) sons and daughters of LPRs.

*Id.*[1]

For each of these types of visas, the visa application process begins with the parent filing a petition—often referred to as a Form I-130—with the United States

---

[1] All of these visa categories apply only to unmarried sons and daughters. *See* 8 U.S.C. § 1153(a)(1) and (a)(2). F3 visas may be available for the married sons and daughters of citizens. 8 U.S.C. § 1153(a)(3). Because this case does not involve a married beneficiary, we do not further address F3 visas here.

Citizenship and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1154(a)(1); *Cuthill*, 990 F.3d at 274. USCIS "thereafter reviews the petition and, if everything is in order, approves it. This process can take up to a year or more." *Cuthill*, 990 F.3d at 274. In cases where the beneficiary will seek a visa while located outside of the United States, USCIS forwards the I-130 to the Department of State's National Visa Center after approval. *See* 8 U.S.C. § 1154(b); 8 C.F.R. § 204.2(d)(3); *see also Teles de Menezes*, 156 F.4th at 4 & n.2.

After USCIS has approved and forwarded an I-130 petition, "[t]he next step involves the beneficiary submitting a visa application to [the Department of State]." *Teles de Menezes*, 156 F.4th at 4; *see also* 8 U.S.C. § 1202(a). Importantly, however, "a beneficiary may submit an application for a visa only once a visa in that category is available." *Teles de Menezes*, 156 F.4th at 4. "[I]n some circumstances, the visa that the beneficiary seeks may not be available upon approval of their petition due to the annual numerical caps that have been placed by statute on visas in the relevant category." *Id.*; *see also* 8 U.S.C. § 1153(a). However, after "a visa becomes available, the beneficiary can apply for a visa, schedule an interview, and, if all goes right, come to the United States." *Cuthill*, 990 F.3d at 275.

Immediate-relative visas "are not subject to any numerical caps, so [applicants in this category] can receive their visas soon after their petitions are approved." *Id.* at 274. But for beneficiaries in the F1, F2A, and F2B preference categories, which are subject to annual caps, approval of an I-130 petition generally "results not in getting a visa, but only in getting a place in a second, often longer line." *Id.* at 274–

4

75. Because the demand for these visas frequently exceeds the annual caps, "the beneficiary of an approved petition [in one of these categories] is placed in a first-come, first-served queue with others in her category in order of 'priority date'—that is, the date on which the visa petition was filed." *Id.* at 275.

The Department of State issues a monthly Visa Bulletin listing the priority dates that have become "current" based on the beneficiary's preference category and country of origin. *Tovar*, 882 F.3d at 897; *see also* 22 C.F.R. § 42.51(b). Visas are only available to beneficiaries with "current" priority dates, meaning that their I-130 petitions were filed on or before the cutoff date in the monthly Visa Bulletin. *Tovar*, 882 F.3d at 897.

The priority dates for different types of visas vary dramatically. For instance, in January 2025, the current priority dates for beneficiaries from Mexico were (1) November 22, 2004, for F1 visa seekers; (2) May 15, 2021, for F2A visa seekers; and (3) July 1, 2005, for F2B visa seekers. Thus, as of January 2025, the only F1 visa seekers from Mexico who could apply for a visa based on their approved I-130 petitions were those whose petitions had been filed more than twenty years earlier, prior to November 23, 2004. Mexican F2B visa seekers—who, like F1 visa seekers, are those statutorily categorized as adults—were likewise able to apply for a visa only if they had filed their petitions approximately two decades earlier. On the other hand, F2A visa seekers' waitlist was less than four years long, while immediate-relative beneficiaries could apply for a visa immediately. As these priority dates

5

demonstrate, the beneficiary's "age is extremely important" in determining when the beneficiary can apply for a visa. *Cuthill*, 990 F.3d at 275.

Under the Immigration and Naturalization Act, "child" is defined in pertinent part as "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1). Several other statutory provisions rely on this definition to differentiate between categories of visa applicants, with those statutorily defined as children receiving more preferential treatment. However, due to the long waiting periods involved in the visa application process, prior to 2002 "there existed a serious problem whereby child beneficiaries 'aged out' of their immediate-relative or F2A visa eligibility." *Cuthill*, 990 F.3d at 275. "To fix this problem, Congress in 2002—with unanimous bipartisan support—enacted the Child Status Protection Act ('CSPA')." *Id.* at 275–76. This statute added several provisions to the Immigration and Naturalization Act to ensure that this preferential treatment for children is extended to beneficiaries who were children when their I-130 petitions were filed. *See Teles de Menezes*, 156 F.4th at 5.

"The CSPA protects against 'aging out' in several ways." *Id.* First, for the children of U.S. citizens who are younger than twenty-one when the I-130 is filed, the CSPA provides that, "for purposes of [§ 1151(b)(2)(A)(i), the statute governing immediate-relative visas], a determination of whether an alien satisfies the age requirement [of § 1101(b)(1)] shall be made using the age of the alien on the date on which the petition is filed." 8 U.S.C. § 1151(f)(1). "Thus, for children of U.S. citizens who are under 21 on the date their parent's visa petition is filed, their

6

'statutory' age remains frozen throughout the entirety of the visa process, no matter how much time has passed. As a result, the 'aging out' problem no longer arises for them." *Teles de Menezes*, 156 F.4th at 5–6.

"Second, with respect to the children of LPRs—those in the F2A category—the CSPA provides for more limited protection." *Id.* at 6. Specifically, the CSPA provides:

> (h) **Rules for determining whether certain aliens are children**
>
> (1) **In general.** For purposes of [§ 1153(a)(2)(A), the statute governing F2A visas], a determination of whether an alien satisfies the age requirement [of § 1101(b)(1)] shall be made using—
>
> (A) the age of the alien on the date on which an immigrant visa number becomes available for such alien . . . , but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability; reduced by
>
> (B) the number of days in the period during which the [I-130 petition] was pending.

8 U.S.C. § 1153(h)(1).

To understand the effect of this provision, it is important to understand that an F2A visa seeker has "two relevant waiting periods" between filing an I-130 petition and filing a visa application: "(1) the time it takes for the agency to process the petition and (2) the time it takes for a visa to become available." *Cuthill*, 990 F.3d at 275. The CSPA "provides that the former source of delay—the bureaucratic processing time—should be subtracted from the biological age of a visa beneficiary for purposes of determining their minor status." *Id.* at 276. On the other hand, "the time lost because of the latter source of delay—time spent waiting in a visa queue—

is not subtracted from the beneficiary's age." *Id.* But as soon as a visa becomes available, the beneficiary's statutory age is frozen at this point in time, meaning that no delay in the subsequent visa approval process will be counted against the beneficiary in determining whether he meets the age requirement of § 1101(b)(1) unless he fails to seek a visa within the next year. *See* § 1153(h)(1); *see also Teles de Menezes*, 156 F.4th at 6. Thus, under the CSPA, the only time that counts against an F2A beneficiary is the time in which she is "waiting in a visa queue," *i.e.*, waiting for her priority date to become "current" in the Department of State's Visa Bulletin. *Cuthill*, 990 F.3d at 276.

"The CSPA also addresses one additional eventuality: the possibility that the sponsoring parent of a beneficiary in either the F2A category (for children of LPRs) or the F2B category (for adult sons or daughters of LPRs) naturalizes during the pendency of the visa process." *Teles de Menezes*, 156 F.4th at 6. With respect to the F2B category, when the parent of an adult son or daughter naturalizes, "the CSPA gives the beneficiary a choice." *Id.* By default, the F2B petition will be converted to an F1 petition, but the beneficiary may "elect[] not to have such conversion occur." 8 U.S.C. § 1154(k)(2). If the beneficiary so elects, the eligibility determination "shall be made as if such naturalization had not taken place." *Id.*

"In this way, the CSPA altered the pre-existing framework." *Teles de Menezes*, 156 F.4th at 6. Prior to passage of the CSPA, "F2B beneficiaries did not have the option to remain in the F2B category upon their parent's naturalization even if reclassifying into the F1 category would mean a longer wait to submit a visa

application." *Id.* "Thus, the CSPA removed the risk that an F2B beneficiary—by converting automatically to the potentially longer F1 queue—would be made worse off by their parent's naturalization." *Id.*

As for children in the F2A category, the CSPA provides:

> In the case of [a visa petition] initially filed for an alien child's classification as [an F2A beneficiary], based on the child's parent being lawfully admitted for permanent residence, if the petition is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under [§ 1151(b)(2)(A)(i)], the determination described in [§ 1151(f)(1), the provision describing the age determination for immediate relatives,] shall be made using the age of the alien on the date of the parent's naturalization.

8 U.S.C. § 1151(f)(2). It is the interpretation of this provision that is before us in this appeal.

## II.    FACTUAL BACKGROUND

In December 2017, Dalila Dekovic, then an LPR, filed an I-130 visa petition for her son, Alejandro Jimenez Ramirez, seeking his classification in the F2A preference category. Because Mr. Jimenez Ramirez was twenty years old and unmarried when his mother filed the I-130, he was statutorily defined as the minor child of an LPR. Mr. Jimenez Ramirez was born in Mexico.

After a delay of almost two years, USCIS approved the I-130 in the F2A preference category on November 15, 2019. At that time, the F2A visa category for Mexico was "current," meaning that a visa was then available. App. at 66. Because a visa was immediately available, Mr. Jimenez Ramirez's statutory age under § 1153(h)(1)—calculated by taking his age when a visa became available and

9

subtracting the amount of time his mother's petition was pending—remained twenty years old.

USCIS forwarded the approved I-130 to the National Visa Center, and Mr. Jimenez Ramirez began the process to receive a visa. However, a visa had not yet been issued on April 2, 2021, when Ms. Dekovic became a naturalized U.S. citizen.

Ms. Dekovic informed the National Visa Center of her naturalization in April 2021. Shortly thereafter, the National Visa Center changed Mr. Jimenez Ramirez's classification from F2A to F1, switching his designation from the minor child of an LPR to the adult son of a U.S. citizen.

This change has significant ramifications for Ms. Dekovic's ability to obtain an immigrant visa for her son. Although a visa had been available for Mr. Jimenez Ramirez when his mother naturalized, the reclassification decision removed his current visa availability and placed him on a waitlist that is approximately twenty years long, meaning that Mr. Jimenez Ramirez may need to wait for two decades or more before he can rejoin his family in the United States based solely on the fact that his mother became a U.S. citizen.

To challenge this decision, Ms. Dekovic and Mr. Jimenez Ramirez (collectively, "Appellants") sued several government officials from different agencies in their official capacities. Appellants contended that Mr. Jimenez Ramirez should have been reclassified instead as an immediate relative, given that his statutory age was under twenty-one at the time of his mother's naturalization.

The district court held that the lawsuit could proceed against the Secretary of State and the Director of the National Visa Center[2] (collectively, "the Government"). The district court also held that the reclassification decision qualified as a final agency action subject to judicial review. But on the merits, the district court affirmed the reclassification decision, reasoning that the plain language of the statute referred to chronological age. The district court therefore entered judgment in favor of the Government. Appellants then filed this timely appeal.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's holding that the reclassification decision qualified as a final agency action but reverse the district court's entry of judgment in favor of the Government.

### III.    DISCUSSION

We first address the Government's argument that the district court erred in holding that the National Visa Center's reclassification decision was a final agency action subject to judicial review. We then turn to Appellants' argument that the agency erred in changing Mr. Jimenez Ramirez's classification from F2A to F1 rather than immediate relative.

### A.    *Final Agency Action*

The Administrative Procedure Act provides in pertinent part that a "final agency action for which there is no other adequate remedy in a court [is] subject to judicial

---

[2] The district court dismissed Appellants' claims against government officials from other agencies for lack of standing, reasoning that the alleged injuries were caused by the Department of State and the National Visa Center, not by other agencies' actions. Appellants do not challenge that ruling on appeal.

11

review." 5 U.S.C. § 704. "To be 'final,' an agency action must (1) 'mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature'; and (2) 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Custodia Bank v. Fed. Reserve Bd. of Govs.*, 157 F.4th 1235, 1249 (10th Cir. 2025) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

"[A]n agency action can, in certain cases, 'qualify as final agency action even if the ultimate impact of that action rests on a decision by another administrative agency or conduct by a regulated party.'" *Id.* (quoting *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*, 128 F.4th 1089, 1110 (9th Cir. 2025)). Moreover, "[w]here an agency has issued a definitive statement of its position, determining the rights and obligations of the parties, the agency's action is final notwithstanding the possibility of further proceedings in the agency on related issues." *Cure Land, LLC v. U.S. Dep't of Agric.*, 833 F.3d 1223, 1232 (10th Cir. 2016) (internal quotation marks omitted).

"There is a 'presumption in favor of judicial review of administrative action.'" *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1189 (10th Cir. 2014) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 348 (1984)). "Additionally, we construe the concept of final agency action pragmatically, rather than inflexibly." *Id.* "Even if 'the agency has not dressed its decision with the conventional procedural accoutrements of finality, its own behavior could belie the claim that its interpretation is not final.'" *Id.* (brackets omitted) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 479 (2001)). An agency cannot prevent an action from being considered final by

simply leaving open the possibility that it may "revisit" its decision in the future; rather, an agency action that takes a definitive and rights-determining position on an issue is a final agency decision even if the agency indicates that it may change its position in the future if circumstances change. *Cure Land*, 833 F.3d at 1230–32.

On appeal, the Government does not dispute that legal consequences will flow from the National Visa Center's decision to reclassify Mr. Jimenez Ramirez from F2A status to F1 status. However, the Government nonetheless argues that the National Visa Center's reclassification decisions are never final because a beneficiary's visa category could theoretically be affected in the future by new life circumstances and because "the final visa classification determination will not occur until [the beneficiary] appears before a consular officer and executes a visa application." Appellees' Br. at 14.

In reply, Appellants point out that a consular officer cannot evaluate a beneficiary's visa classification until the beneficiary's priority date has become "current" based on the National Visa Center's earlier classification decision. Reply Br. at 2–3. Moreover, there is no right to an administrative appeal of a National Visa Center classification decision. Accordingly, the National Visa Center's classification determination is effectively the final word on how the beneficiary's priority date will be determined, which carries significant legal and practical consequences for the beneficiary and sponsor.

Appellants further point out that "[a]dopting the [G]overnment's view on finality would strip [them] of any possibility of judicial review." *Id.* at 4. Under the Government's view, Mr. Jimenez Ramirez "would have to wait until he was comfortably

13

in middle age and had completed his visa interview before he could challenge the [National Visa Center's] decision not to schedule an earlier interview." *Id.* And if a court then agreed with him that he should have been allowed to receive a visa interview as a minor child twenty years earlier, there would be no remedy for the twenty years in which he was separated from his mother based on this erroneous agency decision. "The only scenario in which the [G]overnment's position would make sense is if [Mr. Jimenez Ramirez] could still schedule an interview *now*, with a disputed claim to immediate relative status, and then bring suit if a consular officer disagreed . . . ." *Id.* "But as the [G]overnment has conceded, that is not possible, because the [National Visa Center] schedules the interview, and only after it has determined that a visa is available." *Id.*

We agree with the district court that the National Visa Center's reclassification decision is a final agency action. It is a definitive, otherwise unreviewable determination of how the agency will calculate the beneficiary's priority date, which has a direct and immediate impact on the complaining parties by determining when the beneficiary will be able to schedule a visa interview. *See Cure Land*, 833 F.3d at 1230–32. Even if the consulate officer might decide after the interview that the National Visa Center's classification decision was incorrect, this will have no effect on the length of time the beneficiary had to wait before this interview occurred. The National Visa Center's classification decision thus has immediate legal consequences for a beneficiary even though the consulate officer will have the ultimate say in the beneficiary's immigration status. *See id.*; *Custodia Bank*, 157 F.4th at 1249. And the possibility that the National Visa Center might engage in a future reclassification decision based on changed life

circumstances does not change this analysis. *See Cure Land*, 833 F.3d at 1230–32; *see also Ctr. for Native Ecosystems v. Cables*, 509 F.3d 1310, 1330 (10th Cir. 2007) (recognizing, in the context of a challenge to the Forest Service's reduction in authorized cattle grazing under its Annual Operating Instructions ("AOIs"), that "events during the grazing season (such as a fire) can require further modifications to what grazing is permitted," but holding that the AOIs are nevertheless final agency actions because they provide "the last word before grazing begins and undoubtedly have clear and definite consequences for [grazing] permittees, who need to make their plans based on what the AOIs authorize").

Moreover, we agree with Appellants that the National Visa Center's classification decisions would be effectively shielded from judicial review if they could not be reviewed when they occurred but could instead only be reviewed after the beneficiary was finally able to receive a visa interview with a consular officer—an event that might not occur until decades later. Mr. Jimenez Ramirez's situation illustrates the weakness of the Government's position. Before the National Visa Center reclassified Mr. Jimenez Ramirez from F2A to F1, he had current eligibility to apply for a visa and seek a visa interview with a consular officer. The National Visa Center's reclassification stripped him of this eligibility and pushed him instead onto a decades-long waitlist. But the Government argues that because the consular officer may reach a different result decades from now, when Mr. Jimenez Ramirez is finally able to receive the visa interview that the National Visa Center's reclassification is currently preventing, he cannot challenge the

National Visa Center's refusal to allow him to obtain that interview now. A different result in two decades, however, will not cure the injury caused by this twenty-year delay.

In the context of agency decisions subject to mandatory administrative appeals, the Supreme Court has held that "'[a]gencies may avoid the finality of an initial decision' only 'by providing that the initial decision would be inoperative pending appeal. Otherwise, the initial decision becomes final and the aggrieved party is entitled to judicial review.'" *Farrell-Cooper Min. Co. v. U.S. Dep't of Interior*, 864 F.3d 1105, 1107 (10th Cir. 2017) (quoting *Darby v. Cisneros*, 509 U.S. 137, 152 (1993)). The same reasoning applies here. Because the National Visa Center's reclassification decision is operative now, affecting Mr. Jimenez Ramirez's rights to apply for a visa and receive a visa interview with a consular officer, the agency's "initial decision bec[ame] final" and is subject to judicial review regardless of the fact that it will be subject to a form of administrative review at some unknown future date. *Id.*

The Government's position, if accepted by this court, would effectively insulate a rights-determining agency decision from judicial review. And this result would vitiate the Administrative Procedure Act, which establishes mechanisms for judicial review of agency decisions and further requires courts to compel agency action that has been "unlawfully withheld . . . or unreasonably delayed." *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1189 (10th Cir. 1999); *see also Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990) ("At this point, justice delayed is justice denied.").

We therefore affirm the district court's conclusion that the National Visa Center's decision to reclassify Mr. Jimenez Ramirez from F2A to F1 status is a final agency action subject to judicial review.

## B.    Reclassification under the CSPA

We turn now to the district court's conclusion that 8 U.S.C. § 1151(f)(2)'s reference to "the age of the alien on the date of the parent's naturalization" for petitions initially filed under F2A unambiguously refers to chronological age even though the CSPA elsewhere establishes a specific statutory formula for calculating the age of F2A beneficiaries.

"We review de novo a district court's statutory construction." *Potts v. Ctr. for Excellence in Higher Ed.*, 908 F.3d 610, 613 (10th Cir. 2018). "When interpreting a statute, our primary task is to determine congressional intent, using traditional tools of statutory interpretation." *Id.* (internal quotation marks omitted). "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* (quotation marks omitted). We conduct this inquiry by "examining the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (internal quotation marks omitted).

"A statute is ambiguous if it is reasonably susceptible to more than one interpretation," *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1226 (10th Cir. 2014) (internal quotation marks omitted), or "capable of being understood by reasonably well-informed persons in two or more different senses,"

17

*United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002) (internal quotation marks omitted). If we conclude that "the statutory language is ambiguous, we look to the legislative history and the underlying public policy of the statute" to guide our interpretation. *Seale v. Peacock*, 32 F.4th 1011, 1024 (10th Cir. 2022) (internal quotation marks omitted); *see also Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1097 (10th Cir. 2005) ("Where the language of a statute is arguably ambiguous, courts also look to public policy considerations to cast further elucidation on Congress' likely intent.").

### 1.     Statutory Text

Because we must determine whether § 1151(f)(2), considered in the context of the statute as a whole, "is reasonably susceptible to more than one interpretation," *Nomura*, 764 F.3d at 1226, we begin by setting forth the arguments in favor of Appellants' interpretation of the statute, followed by the arguments in favor of the Government's interpretation.

#### a.     Arguments for interpreting § 1151(f)(2) to refer to statutory age

The CSPA provides that when a petition is initially filed under F2A and "is later converted, due to the naturalization of the parent, to a petition to classify the [beneficiary] as an immediate relative," the determination of whether the beneficiary meets the age requirement for immediate relatives "shall be made using the age of the [beneficiary] on the date of the parent's naturalization." 8 U.S.C. § 1151(f)(2).

As the Second Circuit acknowledged in *Cuthill*, "[t]he term 'age,' standing in isolation, normally means biological age." 990 F.3d at 279. However, the Supreme Court has explained that "oftentimes the 'meaning—or ambiguity—of certain words or phrases

18

may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)). Accordingly, "when deciding whether the language is plain, we must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *Id.* (quoting *Brown & Williamson*, 529 U.S. at 133). A court's "duty, after all, is 'to construe statutes, not isolated provisions.'" *Id.* (quoting *Graham Cnty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson*, U.S. 280, 290 (2010)).

Our sister circuits have referred to "three antecedent provisions" to interpret the text of § 1151(f)(2) within its statutory context. *Cuthill*, 990 F.3d at 279. As the Second Circuit explained in *Cuthill*:

> First, 8 U.S.C. § 1101(b)(1) provides a general definition that, subject to certain complexities not relevant here, a "child" is "an unmarried person under twenty-one years of age." There can be no dispute that this refers to biological age.

> Second, 8 U.S.C. § 1153(a)(2)(A) provides that F2A visas can be given to "children of [LPRs]." As we just saw, the default definition of "child" is a person under 21 years in biological age. Section 1153(a)(2)(A) thus *appears* to require that F2A visa beneficiaries must be under 21 in biological years.

> But the third provision, 8 U.S.C. § 1153(h)(1), explicitly requires a different mechanism for determining a beneficiary's age for the purposes of F2A visas and one other visa category not relevant here. It provides:

>> For purposes of [§ 1153(a)(2)(A), the provision discussed in the previous paragraph and which applies exclusively to F2A visas,] a determination of whether an alien satisfies the age requirement in [§ 1101(b)(1), the first provision discussed above which provides for a default definition of 'child,'] shall be made using —

>> (A) the age of the alien on the date on which an immigrant visa number becomes available for such alien . . .; reduced by

> > (B) the number of days in the period during which the [F2A petition] was pending.
>
> *Id.* In other words, the CSPA dictates that, in determining whether an F2A beneficiary is a minor, we use a statutory formula rather than pure biological age.

990 F.3d at 279 (alterations in original).

Our sister circuits have reasoned that "[b]ecause § 1151(f)(2) refers *solely* to F2A beneficiaries, and because Congress specifically provided for a modified age calculation for F2A beneficiaries, . . . the best textual reading of 'the age of the [F2A beneficiary] on the date of the parent's naturalization' is that it refers to the F2A beneficiary's statutory age on such date." *Id.* at 279–80; *see also Tovar v. Sessions*, 882 F.3d 895, 901 (9th Cir. 2018) (noting that "[t]he word 'chronological' appears nowhere in the statute" and concluding that "[a]n explicit cross-reference" between § 1151(f)(2) and § 1153(h)(1) "is unnecessary when the . . . provisions are so closely related and form a cohesive whole"); *Teles de Menezes*, 156 F.4th at 13 ("[A]s we have explained, § 1153(h)(1) supplies a modified formula for determining the age of an F2A beneficiary, and § 1151(f)(2) applies, by its own terms, only to such beneficiaries. Thus, the 'age' of every beneficiary to whom § 1151(f)(2)'s conversion rule applies is already modified, namely, by § 1153(h)(1).").

These circuits have concluded that this interpretation is bolstered by other aspects of the statutory context, as "a contrary construction of the text would produce three significant anomalies that the appellees cannot explain." *Teles de Menezes*, 156 F.4th at 15; *see also Potts*, 908 F.3d at 613 (indicating that we will conduct a further inquiry

into congressional intent, even if we might otherwise find the statutory language to be unambiguous, if an interpretation would not result in a "coherent and consistent" "statutory scheme" (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997))).

"The first anomaly arises because the family-based visa scheme affords preferential treatment to the children of U.S. citizens over the children of LPRs, by exempting 'immediate relatives' of U.S. citizens from the visa cap, and generally privileging U.S. citizens over LPRs in the visa process." *Teles de Menezes*, 156 F.4th at 15 (citations omitted). However, the Government's interpretation of the statute "has the effect of penalizing a parent's naturalization," as this interpretation would allow F2A beneficiaries to "maintain[] the CSPA's age-out protections *only* so long as their LPR parent does *not* naturalize." *Id.* "The incongruity of this result is underscored by the CSPA, which signals Congress's intent not to have a parent's naturalization penalize a beneficiary." *Id.*

"The second anomaly that the [Government's] view occasions arises because it would require the CSPA to be read to protect against aging out as a result of bureaucratic delay for child beneficiaries in both the 'immediate relatives' and the F2A categories but not for the subset of beneficiaries who move from one category to the other." *Id.* at 16. Construing the statute in this manner would thus "not only 'leave a sizable hole in the CSPA's age-out protections,' but also 'defeat one of its most important purposes.'" *Id.* (citations omitted) (quoting first *Cuthill*, 990 F.3d at 281, and then *United States v. Gelin*, 712 F.3d 612, 619 (1st Cir. 2013)). Of course, "Congress could choose to create such a

21

hole," but the circuits to consider the issue have held that there is "little reason to find one when the text comfortably suggests there is none to be found." *Id.* at 16.

"The third, and final, anomaly that would arise from the [Government's] construction of the statute is that adult sons and daughters would receive a benefit denied to minor sons and daughters, notwithstanding that the family-based visa system generally preferences child beneficiaries." *Id.* at 17. "This anomaly would arise because, in the [Government's] view, the CSPA provides adult F2B beneficiaries, but not minor F2A beneficiaries, the ability to opt out of converting to the F1 category upon a parent's naturalization." *Id.* This interpretation would therefore mean that those who file as adult sons and daughters, but not those who file as minor children, would "receive preferential treatment in the form of the ability to opt out of a longer queue." *Id.* "Yet the [Government] provide[s] no explanation that would account for this departure from the overarching statutory scheme's generally child-favoring disposition." *Id.*

In addition to introducing anomalies into the statutory scheme, the Government's interpretation of the statute would require us to read words into the statute that are not included in its plain text. Section 1151(f)(2), by its terms, contemplates only one type of reclassification—from F2A status to immediate-relative status. *See* § 1151(f)(2) ("[I]f [a] petition [under F2A] is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under [§ 1151(b)(2)(A)(i)], the determination described in [§ 1151(f)(1)] shall be made using the age of the alien on the date of the parent's naturalization."). Nothing in the statute seems to anticipate the Government reclassifying a beneficiary from F2A status to F1 status. Thus, the statutory

text as written did not permit the National Visa Center to engage in the reclassification decision that occurred in this case. *See Cuthill*, 990 F.3d at 283 ("If anything, it is the *government's* proposed switch that is without precedent, as there is no express statutory F2A-to-F1 mechanism in the CSPA."); *Tovar*, 882 F.3d at 903 ("Neither the regulation nor the statute authorizes the result the government advocates here: conversion of an F2A petition into an F1 petition."). And the Government does not explain why we should interpret the statute to implicitly allow for petitions to be reclassified from F2A to F1 when other types of reclassifications are expressly provided for by the statutory text.

On the other hand, if the statute is interpreted as our sister circuits have interpreted it, then there is no need to read words into the statute because a beneficiary will never be converted from F2A status to F1 status. Rather, if a petition was "initially filed" under F2A and the beneficiary's statutory age at the time of the parent's naturalization is under twenty-one, then the beneficiary will be converted from F2A status to immediate-relative status based on this interpretation of § 1151(f)(2) even if the beneficiary's chronological age is now twenty-one or older. And if the beneficiary's statutory age at the time of the parent's naturalization has reached twenty-one, then the petition will not be converted directly from F2A status to F1 status. Instead, the change in the petitioner's statutory age would have automatically changed his status from F2A to F2B before naturalization, and the parent's naturalization would allow the now-F2B beneficiary to either convert into F1 status or to retain F2B status under 8 U.S.C. § 1154(k)(2). *See* § 1153(h)(3); *see also Cuthill*, 990 F.3d at 276 ("The CSPA thus provides that if the F2A beneficiary's statutory age is still 21 or older even after deducting the processing time, the F2A petition

23

automatically converts to an F2B petition (which, recall, is for adult sons and daughters of LPRs).").

By tying the age determination to the beneficiary's age at the time of the parent's naturalization, the statute ensures that a beneficiary who has aged out of F2A status waiting in a visa queue cannot seek to change from his new F2B status to immediate-relative status simply because his petition was "initially filed" as an F2A petition. But if the petition was "initially filed" as an F2A petition and the beneficiary's statutory age remains under twenty-one, then—per this interpretation of the statute—the beneficiary is able to retain that statutory age by converting from F2A status to immediate-relative status rather than losing the benefit of the CSPA's tolling provisions due to his parent's naturalization. This interpretation of the statute thus covers all possible reclassification decisions, whereas the Government's interpretation leaves a significant textual gap and allows a reclassification decision that is untethered to the statutory text.

    *b.*        *Arguments for interpreting § 1151(f)(2) to refer to biological age*

The district court concluded that the plain language of § 1151(f)(2) necessarily refers only to chronological age because (1) Congress showed in the CSPA that it was "ready, willing, and able to provide various measures of age for various purposes," but it did not include a specific age modification formula in the text of § 1151(f)(2); (2) the CSPA contains numerous cross-references, but Congress did not directly cross reference § 1151(f)(2) to § 1153(h)(1); and (3) the phrase "'the age of the alien on the date of the parent's naturalization' is quite plain and simple." App. at 176. The district court acknowledged that its interpretation of the statute was "contrary to the[] general

24

principles and goals" of the CSPA "[i]n some notable ways." *Id.* at 177. However, the court concluded that because "the CSPA is filled with varied categories of petitioners and applicants who, depending on a variety of different circumstances, receive significantly different treatment," it would be "improper" to interpret § 1151(f)(2) by reference to § 1153(h)(1) when the district court found the statutory phrase "age of the alien" to be "plain and simple" on its face. *Id.* at 177–78.

The Government urges us to adopt the district court's reasoning on these points. The Government also raises several additional arguments for affirmance, none of which are persuasive.

First, the Government argues that the age calculation in § 1153(h)(1) cannot apply to reclassification decisions under § 1151(f)(2) because § 1153(h)(1) provides the age calculation for F2A beneficiaries, whereas § 1151(f)(2) establishes eligibility for immediate-relative visas. This argument ignores the fact that § 1151(f)(2) does not govern immediate-relative visas per se—rather, it applies on its face only to a petition that was "initially filed" as an F2A petition and "is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under subsection (b)(2)(A)(i)." 8 U.S.C. § 1151(f)(2). Thus, this argument in fact cuts against the Government, as the only individuals affected by § 1151(f)(2) are those whose age for statutory purposes was indisputably calculated under the provisions of § 1153(h)(1) up until (at a minimum) the moment of their parents' naturalization.

The Government next argues that § 1153(h)(1)(A)'s statutory age calculation cannot apply to § 1151(f)(2) because § 1153(h)(1)(A) "requires that the beneficiary seek

25

to acquire lawful permanent resident status within one year of visa availability in order to take advantage of § 1153(h)'s age-calculation formula." Appellees' Br. at 21–22. The Government reasons that this "one-year deadline makes little sense in the context of immediate relative visas, where Congress has never limited when an eligible individual can obtain a visa." *Id.* at 22. Again, this argument ignores the fact that § 1151(f)(2) does not govern immediate-relative visas per se, but instead only governs petitions that are initially filed as F2A petitions by parents who later become U.S. citizens. Interpreting § 1151(f)(2) to define age by reference to § 1153(h)(1)(A) means that the petitioners' actions prior to naturalization may be relevant in determining whether the beneficiary can qualify as an immediate relative when the sponsor naturalizes. A sponsor, like Ms. Dekovic, who files an F2A petition on behalf of her minor child and then pursues a visa when it becomes available may be entitled to the benefit of the CSPA's tolling provisions. On the other hand, a sponsor who files an F2A petition but sleeps on her rights by failing to take any action within one year of visa availability may lose her ability to take advantage of this statutory age calculation even if she later naturalizes. There is thus nothing nonsensical about applying this statutory age calculation in its entirety to petitions initially filed under F2A and later reclassified based on the parents' naturalization.

For similar reasons, we are unpersuaded by the Government's argument that "if Congress had intended to allow an F2A beneficiary to always retain his or her child status," Congress would have "selected as the relevant trigger 'the age on the date on which the F2A petition was filed,'" rather than "'the age of the alien on the date of the

parent's naturalization.'" *Id.* at 21–22. But Appellants are not arguing that Congress intended to allow beneficiaries to always retain their child status; rather, they are arguing that Congress intended the F2A age calculation set forth in § 1153(h)(1) to apply to beneficiaries who initially file petitions under F2A but are then reclassified into a different preference category based on their parents' naturalization. And, contrary to the Government's apparent assumption, the age calculation for F2A beneficiaries set forth in § 1153(h)(1) does not mean that the child's statutory age is always his age on the date when the F2A petition was filed. Rather, as *Cuthill* explains, § 1153(h)(1) subtracts "bureaucratic processing time" from the beneficiary's biological age to derive his statutory age, but it does not subtract "time spent waiting in a visa queue." 990 F.3d at 276. In Mr. Jimenez Ramirez's case, he did not spend any time waiting in a visa queue, and thus his statutory age is equivalent to his age when his mother filed the F2A petition. But this will not always be the case, and our sister circuits' interpretation of § 1151(f)(2) would allow F2A beneficiaries whose statutory age is under twenty-one at the time of their parents' naturalization to be converted into immediate-relative status, while petitioners who filed under F2A but then aged out of F2A status in a long visa queue will not be converted back into minor status as immediate relatives when their parents later naturalize.

The Government further argues that "Congress may have had a reason for not applying the § 1153(h) age calculation to those in [Mr. Jimenez Ramirez's] circumstances[;] for example[,] doing so would disadvantage adult children who have their own minor children they seek to bring with them, which they could not do if treated

as immediate relatives." Appellees' Br. at 23. The Second Circuit rejected a similar argument in *Cuthill*, concluding that "Congress made a common-sense judgment that the immediate-relative category is far preferable to the F2A category even if that means losing the ability to bring derivative beneficiaries." 990 F.3d at 283. And the Government has not and cannot provide any legislative history to support its hypothetical congressional intent argument. Indeed, as we discuss below, the legislative history strongly points to the conclusion that the CSPA was intended to prevent precisely the outcomes that the Government wants to achieve in this case—penalizing child petitioners who turn twenty-one before they can obtain a visa due to bureaucratic processing delays, and penalizing beneficiaries for their parents' decision to become naturalized citizens rather than remaining LPRs.

Finally, the Government argues that we should reject our sister circuits' thoughtful analyses as "results-driven decisions." Appellees' Br. at 24. However, the "result" these circuits sought was interpreting the statute in a manner consistent with congressional intent and with a view of § 1151(f)(2)'s place within the statutory context as a whole. And that is precisely our role when tasked with interpreting a statute. The fact that our sister circuits did not arrive at the result desired by the Government is not a valid reason to disagree with their careful consideration of the statutory text and context.

2.    **Legislative History and Public Policy Purpose**

As the Second Circuit explained in *Cuthill*, "the purpose and history of the CSPA overwhelmingly favor [Appellants'] reading of § 1151(f)(2)." 990 F.3d at 284. "There is no dispute that Congress enacted the CSPA because it wanted to protect child

28

beneficiaries from aging out of their age-dependent child visas," and "[t]here is no indication whatsoever that Congress wanted to single out beneficiaries like [Mr. Jimenez Ramirez] for exclusion from the CSPA's anti-aging-out remedies." *Id.* Moreover, "[w]hile reliance on legislative purpose is sometimes criticized on the ground that Congress is a divided body that does not speak with a single voice or purpose, that critique does not apply here." *Id.* "It is hard to imagine a piece of legislation that speaks with more unmistakable clarity of purpose than the CSPA," which was passed into law by a unanimous House and Senate. *Id.* No legislator opposed the statute, and the "Senators and House members of both parties [who] spoke in support of the legislation" all "focused on the same theme: Children should not lose their coveted status due to agency processing time." *Id.* "The House Report, moreover, indicates the drafters' judgment that this same assurance should be afforded 'when permanent resident parents petition for immigrant visas for their sons and daughters and later naturalize.'" *Teles de Menezes*, 156 F.4th at 17 (quoting H.R. Rep. No. 107-45, at 3).

The Government's only response to this extensive and undisputed legislative history is to argue that "Congress clearly understood the complexity of the statute it created and its intent was not so certain as to undermine the plain language of § 1151(f)(2)." Appellees' Br. at 28.

## 3. Interpretation

For the reasons described above, we conclude that the text of § 1151(f)(2), when considered in the context of the whole statute, is more properly interpreted in favor of Appellants' position. At best, the Government's arguments suggest that § 1151(f)(2) is

ambiguous—a conclusion that, if reached, would still not tilt the scales in favor of the Government. Because even if we assume § 1151(f)(2) is ambiguous, the Government's position cannot overcome the clear and unrebutted statements in the legislative history demonstrating that Congress intended to protect child beneficiaries from aging out of their age-dependent visas due to administrative delays and to prevent children from being penalized for their parents' decision to become naturalized citizens. Therefore, like our sister circuits, we interpret "the age of the [beneficiary] on the date of the parent's naturalization" in § 1151(f)(2) to refer to the beneficiary's statutory age rather than his chronological age. We accordingly reverse the district court's conclusion that the National Visa Center could permissibly reclassify Mr. Jimenez Ramirez's petition from F2A to F1 status when his mother naturalized, stripping him of the protections that the CSPA was intended to provide.

## IV.    CONCLUSION

We AFFIRM the district court's decision that the National Visa Center's reclassification decision was a final agency action subject to judicial review. But we REVERSE the district court's entry of judgment in favor of the Government and REMAND for further proceedings consistent with this opinion.